11008272
2084-1028-0202-J

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia



United States of America

v.

Nadja Siiri Kujanson-Lelio

_____
    *Defendant*

)
)
)
)
)
)

Case No.   1:19mj147

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Nadja Siiri Kujanson-Lelio                                                              ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☑ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. 846    Conspiracy to illegally distribute controlled substance

Date:    10/28/2019
                                                                 *Issuing officer's signature*

                                                            Pamela Meade Sargent USMJ
City and state:    Abingdon, VA                              *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)*  10/28/2019  , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____          _____<br>                                                 *Arresting officer's signature*<br><br>                                                 _____<br>                                                 *Printed name and title* |

AO 91 (Rev. 11/11)  Criminal Complaint

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

OCT 2 8 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 1:19mj147 |
| | ) |
| Nadja Siiri Kujanson-Lelio | ) |
| | ) |
| | ) |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ to August 2019 _____ in the county of _____ Wythe _____ in the
_____ Western _____ District of _____ Virginia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to illegally distribute controlled substance |
| 21 U.S.C. 841 | Illegal distribution of controlled substance |
| 18 U.S.C. 1001 | False statements |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Randy Ramseyer, Assistant U.S. Attorney
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 10/28/19

_____
_Judge's signature_

City and state: Abingdon, VA

Pamela Meade Sargent  USMJ
_Printed name and title_

## PROBABLE CAUSE AFFIDAVIT

1.      I, Christopher J. Terry, being duly sworn, state that I am a Criminal Investigator with the
Wythe County Sheriff's Office (WCSO) and have been so employed since 2011.  While at the
WCSO, I worked as a patrol officer for approximately four (4) years before being assigned to the
Criminal Investigations Division.  During my tenure as a law enforcement officer, I have
conducted or assisted with federal, state, and local narcotic and homicide investigations, and
attended various trainings regarding investigative techniques related to narcotics cases.

2.      This affidavit contains information necessary to support probable cause for the arrest of
Dr. David Francis LELIO and Nadja Siiri KUJANSON-LELIO related to the conspiracy to
distribute controlled substances and the distribution of controlled substances.  The information
contained in this affidavit is not intended to include each and every fact and matter observed by
or known to the affiant.

3.      The information contained in this affidavit is based on my personal observations, my
training and experience, observations of other law enforcement officers, my review of official
police and government reports, review of records and documents gathered during the
investigation, and consultation with other law enforcement officers involved in the investigation.

4.      On February 14, 2019, Wythe County, Virginia Central Dispatch received a report of an
unresponsive 64-year-old male located at 142 Ridgeland Drive in Max Meadows, Virginia 24360
located in Wythe County.  Dispatch reported that the caller was hard to understand, and was
unsure if it was the caller or the connection.  Members of Lead Mines Rescue Squad arrived on
scene and confirmed the unresponsive patient was deceased.  Lead Mines Rescue advised

Central Dispatch that a family member was possibly intoxicated and the circumstances were possibly suspicious. The decedent's son Joseph William MILES was on scene at 142 Ridgeland Drive when emergency personnel arrived.

5.      On February 14, 2019, I, with the Wythe County Sheriff's Office, responded to 142 Ridgeland Drive in Max Meadows, Virginia 24360 located in Wythe County to conduct a death investigation.  The decedent was identified as 63-year-old, white, male, Michael Lee MILES with a date of birth of 06/08/1955 from Charlotte, NC.  Inside the residence at 142 Ridgeland Drive, a North Carolina driver's license was located belonging to the decedent Michael MILES with an address of 7310 Timberneck Ct. in Charlotte, NC. I observed the decedent Michael MILES on the couch in the living room, lying on his back with a blanket covering him.  I observed the decedent Michael MILES in which rigor mortis (which causes the limbs of the decedent to stiffen) was present.  Also, I observed lividity (unnatural color of the skin) in the back area of the decedent which would be consistent with the current body position.  The only clothing the decedent had on was his underwear.

6.      On February 14, 2019, I observed inside the residence located at 142 Ridgeland Drive in Max Meadows, VA 24360, an Apple i-Phone lying on the counter in the kitchen. I touched the screen on the phone to see if it was active.  The lock screen of the phone showed missed calls from the contact Dr. Dave LELIO. I then walked the phone outside and asked JOSEPH Miles if the phone was his or his fathers. JOSEPH stated that the phone was his. I asked JOSEPH why is there a Dr. Dave LELIO calling his phone. JOSEPH stated that he had contacted Dr. LELIO prior to calling 9-1-1 in reference to his father Michael MILES.  JOSEPH stated that Dr. LELIO is a family friend and his Psychiatrist.  JOSEPH then informed me that Dr. LELIO is currently on his way to 142 Ridgeland Drive from Charlotte, North Carolina.  I then asked JOSEPH if he

minded providing me with Dr. LELIO'S phone number.  JOSEPH proceeded to unlock his phone
and provided the number for Dr. LELIO as: 704-726-9614.

7.      After speaking with JOSEPH outside, I proceeded back inside the residence to conduct a
walkthrough.  Lying on a table in the living room behind the decedent Michael MILES was a
glass smoking device that contained a burnt residue consistent with ingesting marijuana.  In the
bedroom located at the end of the hallway on the left side was a partially open dresser drawer
with hypodermic syringes which contained a liquid substance.  Also lying on top of the dresser
was an opened package of a sterile alcohol pad with the contents missing. In the bedroom across
the hallway was another hypodermic syringe lying on top of a bedroom dresser.  In the kitchen I
observed prescription bottles of Oxycontin for both Joseph and Michael MILES, prescribed by
Dr. David LELIO.  Next, I contacted Drug Diversion Agent Chad BROWN with the Virginia
State Police to assist with the investigation.

8.      On February 14, 2019, I conducted an interview with JOSEPH.  He stated that his full
name was Joseph William MILES and that his date of birth was 12/11/1985 (33 years of age).
JOSEPH stated that his phone number was (704) 993-7433.  JOSEPH stated that he lives at 142
Ridgeland Drive in Max Meadows, VA (Wythe County) 99% of the time because of his father.
JOSEPH stated that his secondary address is 7310 Timberneck Ct. in Charlotte, North Carolina.
He stated that Nadja LELIO lives at 7310 Timberneck Court in Charlotte, North Carolina.
JOSEPH stated that Nadja LELIO has been a friend of his for ten (10) years.   JOSEPH stated
that Nadja LELIO'S husband is Dr. David LELIO.  JOSEPH stated that David and Nadja LELIO
live together at 7310 Timberneck Ct. in Charlotte, North Carolina.

9.      JOSEPH stated that he and his father Michael MILES had went to sleep in the living

room while watching TV.  JOSEPH stated that he woke up and found his father Michael MILES

unresponsive.  JOSEPH stated that he then called Dr. David LELIO whom suggested that he

should call 9-1-1.  JOSEPH stated that he called 9-1-1 approximately ten (10) minutes after

finding his father Michael MILES unresponsive.  JOSEPH stated that prior to calling 9-1-1 he

had given his father Michael MILES medication that is used in case of an accidental overdose.

JOSEPH stated that Dr. David LELIO is a medical doctor, psychiatrist, or psychologist. JOSEPH

stated that he and his father Michael MILES see Dr. David LELIO at his home office located at

his residence, 7310 Timberneck Ct., in Charlotte, North Carolina. JOSEPH stated that normally

Dr. LELIO charges $200 per visit but sometimes he would not charge because he felt bad for

them.  JOSEPH stated that if it is just getting your medications refilled it is normally $175.

JOSEPH stated that Dr. LELIO does do a lot of pro bono work and helps him out.

10.     On February 14, 2019, Dr. David LELIO and his wife Nadja KUJANSON-LELIO

arrived on scene at 142 Ridgeland Drive in Max Meadows, VA while I was conducting the death

investigation.  S.A. BROWN and I conducted an interview with Dr. David LELIO, who stated

that his full name is David Francis LELIO and that he lives at 7310 Timberneck Ct. in Charlotte,

North Carolina.  Dr. LELIO stated that his phone number is 704-726-9614.  Dr. LELIO stated he

had not cared for the decedent Michael Lee MILES for approximately two weeks.  Dr. David

LELIO stated that his practice is located within his residence at 7310 Timberneck Ct. in

Charlotte, North Carolina.  Dr. David LELIO stated that he had a license to practice medicine in

North Carolina but not in Virginia.  Dr. LELIO stated that he sees approximately 30 patients at

his residence.  Dr. LELIO stated that he was semi-retired due to a "non compete." Dr. LELIO

stated that he could not charge anyone until June of 2019.  Dr. David LELIO stated due to that,

he told his patients he would see them pro bono. I asked Dr. LELIO for confirmation that he was seeing his patients for free and he stated "correct." Dr. LELIO stated that no money is ever exchanged for all thirty of his patients. S.A. BROWN then asked if the patients only have to pay for their prescription and Dr. LELIO stated "correct."

11.     On February 14, 2019, a state search warrant was executed at 142 Ridgeland Dr. in Max Meadows, Virginia, which resulted in the seizure of various items including approximately 14 grams of suspected heroin, suspected marijuana, drug paraphernalia, medication prescribed by Dr. David LELIO, unfilled prescriptions from Dr. David LELIO, letter documents and a cellular device identified and associated with Joseph William MILES. Multiple unfilled prescriptions for Michael Lee MILES with Dr. David LELIO's signature were located inside the residence. The prescriptions were dated February 11, 2019 for the medication(s): 20mg Adderall (a schedule II-controlled substance), 20mg OxyContin (a schedule II-controlled substance), 10mg Prednisone (a non-controlled substance), and 5mg Pindolol (a non-controlled substance).

12.     On February 14, 2019, the decedent Michael Lee MILES, was sent to the Wythe County Community Hospital awaiting transport to the Western District Office of the Chief Medical Examiner in Roanoke, Virginia for an autopsy to include toxicology. The death investigation is being investigated currently as a potential overdose.

13.     On February 15, 2019 a State Search Warrant was executed at 142 Ridgeland Drive in Max Meadows, Virginia 24360. The State Search Warrant was for possession of a firearm while being in possession of a controlled substance and distribution of a controlled substance. Dr. David LELIO, Nadja KUJANSON-LELIO, and JOSEPH Miles were located inside the residence

together upon my arrival.  Pursuant to the State Search Warrant, your affiant seized multiple

firearms, suspected marijuana, unidentified pills, and a safe.

14.     On February 20, 2019, I obtained a State Search Warrant for electronic contents

contained in the cellular telephone described as an Apple i-Phone, SN: G6TWW8NAJCL8,

which is a phone known to belong to JOSEPH Miles.  Pursuant to this SW the electronic data

was extracted from this phone and analyzed.  From this analysis the followingwas noted:

- According to cell phone analysis and interviews conducted during this investigation, 704-

    993-7433, which is a phone known to be used by JOSEPH Miles until February 2019,

    was in contact with telephone number 312-972-7233 at least 363 times between January

    and February 2019.  Telephone number 312-972-7233 is utilized by Nadja Siiri

    KUJANSON-LELIO in Charlotte, N.C., who I have directly spoken to on more than one

    occasion using this mobile number.  Dr. David LELIO also provided the mobile number

    312-972-7233 to your affiant as a mobile number for his wife Nadja LELIO.

- 312-972-7233, is a number known to be utilized by Nadja Siiri KUJANSON-LELIO.

    Some of the correspondence between Nadja Siiri KUJANSON-LELIO and JOSEPH

    William Miles, extracted from JOSEPH's phone are set forth below:

    January 16,2019

    JOSEPH to NADJA, *"is coming to town today good with u guys"*

    NADJA to JOSEPH, *"D is out on a walk with the pups. It should be, no patients or other stuff. I'll let you know for sure, when he gets back."*

    NADJA to JOSEPH, *"Today is all good, what time are you guys heading down?"*

    NADJA to JOSEPH, *"Hey, if you guys do comn down today, any chance in hell I can please beg you to please stop for diet rite?"*

    *JOSEPH to NADJA, "We're past LKN".*

NADJA to JOSEPH, "Okee dokee, D just left to run some errands stuff for dinner etc. See u when u guys get here".

January 18, 2019

JOSEPH to NADJA, "Hey just got home. Thanks".

NADJA to JOSEPH, "you guys made great time! Glad you are home safe!!".

January 22, 2019

JOSEPH to NADJA, "where did I put that pot?"

(Based on my training and experience, "pot" is a reference to marijuana.)

January 23, 2019

NADJA to JOSEPH, "Not sure what u did with it. I double or triple bagged it. Did u check your tool box on the truck?".

NADJA to JOSEPH, "Did u find it?".

(Due to my training and experience, Individuals commonly place marijuana in multiple bags to limit the odor, to avoid detection while transporting or concealing it inside a motor vehicle)

January 24, 2019

NADJA to JOSEPH, "Hey, I know how hard it is to be there for other people when you feel like shit. If at all possible can we chat between 1:45 and 2:30 tomorrow, D will be at the bank for a 2 pm appointment. He has just floored me in the same manner Pam did to you and pops.

JOSEPH to NADJA, "About drugs".

January 25, 2019

JOSEPH to NADJA, "Hey".

JOSEPH to NADJA, "How many could I borrow.  We're out"

NADJA to JOSEPH, "When's the next script due?".

NADJA to JOSEPH, "*What would be the reason we tell D you guys are coming down early? We certainly can't tell him the truth. I've started to draft the kitchen if you guys wanna use helping me as an excuse.*"

JOSEPH to NADJA, "*It would be just me*".

NADJA to JOSEPH, "*Then you obviously wouldn't be able to stay. I'd offer to come up but the Treg has been in the shop since Tuesday and they don't think I will have it back until Tuesday. She's has major problems. The longer Tiguan barely fits the pups as we learned yesterday when going to the groomer. We were going to ask if you wanted company but since you've said your not doing well, we thought best to hold off, then found out about the Treg Wed afternoon.*"

January 26, 2019

NADJA to JOSEPH, "*Hope u are close, turning my phone off, will put your pills in your room w/everything else!! GO TEAM DAVE!*".

JOSEPH to NADJA, "*Can u unlock the door. I'll be there in 30*".

NADJA to JOSEPH, "*Hopefully the 6 and the other I think it was 26 will take u two through Monday. I hope it's ok, I kept 2 pinks and 1 blue for myself.*"

JOSEPH to NADJA, "*Yep I'm back safe. Wish we could have spoke last night. I only took the 6 so I could pay ya back easier. The 26 are under the comforter in your bonus room*".

January 27, 2019

NADJA to JOSEPH, "*SSDD! But, we have toilets! How are you? Hey, D just ran to the store, and on his way I asked him to consider coming up to see you guys by himself tomorrow. He's been talking about coming up too. I mentioned the script was due, and, I could use the break to get stuff done without continuous interruptions. I even explained to him I was able to make such a big dent on the entertainment room when he and Mike went out cuz I can drag crap into the hall and make a bigger mess and not worry about pissing him off. One of us has to stay in town and wait for the Treg to be done, it makes sense for me to since he can do what I can not. I don't want you guys to make the trip, cuz it's definitely our turn. I hope that's ok with you guys if not, let me know and I will quash the idea as soon as he gets back. If it is ok □ 's!*"

January 28, 2019

NADJA to JOSEPH, "*I did with pops condition do u want me to send up some hidden for u?*"

JOSEPH to NADJA, *"No I'll be okay. I've looked everywhere for that sticky icky but have had no luck. Has it appeared around your house?"*

NADJA to JOSEPH, *"Nope! I'll send the rest with D, I can't have anymore."*

NADJA to JOSEPH, *"Charles was running late, didn't finish up until 3 with him. Then D packed, got to the end of the culdesac and forgot scripts. Just been a crazy day. Not in bed why?*

NADJA to JOSEPH, *"I just spoke with him and he's in or past LKN"*

(Based on my training and experience, "sticky icky" is a reference to marijuana.)

January 29, 2019

NADJA to JOSEPH, *"How's it going with D's visit?"*

JOSEPH to NADJA, *"It's going well. Pops started the day off in. Horrible mood after we got the bill at Walgreens. Everything keeps going up but today was especially expensive. He's calming down."*

JOSEPH to NADJA, *"The adds were 400 and ox was 600. Yes and it jammed so it was too cold to fix out there."*

NADJA to JOSEPH, *"Understand easy to screw up when metal is super cold. Good call. Hopefully, I'll get this to shake by tomorrow. I have to swap cars in the am. My doc is on my list, hopefully I can start splitting the ads with you guys."*

(Based on my training and experience, "adds" is a reference to Adderall, and "ox" is a reference to oxycodone.)

January 30, 2019

JOSEPH to NADJA, *"Do you need a few adds sent home"*

NADJA to JOSEPH, *"If you can yes please. Getting knocked on my ass today F'd me. And I'm gonna have to take Valium for another day or 2, and still need to get shit done. It's stupid muscle tightness from pain which the oxy doesn't do crap for."*

JOSEPH to NADJA, *"Yep. Split it 3 ways".*

NADJA to JOSEPH, *"Did D give you the rest of the sticky?"*

JOSEPH to NADJA, *"He did. What made u send so much. I thought it was gonna be a nuggie or 2".*

(Based on my training and experience, "adds" is a reference to Adderall, and "ox" is a reference to oxycodone.)

February 13, 2019

NADJA to JOSEPH, a photograph of an AT&T account listing multiple cellular device's mobile number including corresponding data usage per device. *Mobile numbers shown were listed as follows; Apple I-pad with wi-fi (312-315-5433), Raymond KUJANSON (312-317-3067), Nadja KUJANSON (312-972-7233), David LELIO (704-605-5365), David LELIO (704-726-9614), David LELIO (704-774-0909), and David LELIO (704-993-7433).*

15.     According to cell phone analysis and interviews conducted during this investigation, 704-993-7433, which is a phone known to be used by JOSEPH Miles until February 2019, was in contact with telephone number 704-726-9614 at least 13 times between February 2017, and February 2019.  Telephone number 704-726-9614 is utilized by Dr. David Francis LELIO in Charlotte, N.C.  Dr. David LELIO provided this number to your affiant during an interview and has since communicated with me using this mobile number.

16.     704-726-9614 is a number known to be utilized by Dr. David Francis LELIO. Some of the correspondence between Dr. David Francis LELIO and JOSEPH William Miles, extracted from JOSEPH's phone, are set forth below:

> January 28, 2019
> JOSEPH to Dr. LELIO, *" Hey D.  It's just you and I for dinner etc.  pops went to bed to relax"*
> Dr. LELIO to JOSEPH, *" Got it bro!  C u soon!  D"*

17.     According to cell phone analysis and interviews conducted during this investigation, 704-993-7433, which is a phone known to be used by JOSEPH Miles until February 2019, was in contact with telephone number 704-774-0909 at least 58 times between September 2018, and February 2019.  Telephone number 704-774-0909 was utilized by the decedent Michael Lee MILES.  Joseph Miles refers to his father in messages as "pops."  Mobile number 704-774-0909

is listed in JOSEPH Miles contact list as "pops." JOSEPH Miles also received multiple

voicemails from the contact "pops." This information was obtained when analyzing data from

JOSEPH Miles' Apple i-Phone.

18.     On April 16, 2019, Special Agent BROWN and I met with DEA Agent Brian

BRADSHAW in Charlotte, NC, regarding an Application and Affidavit for the Search and

Seizure of Dr. David Francis LELIO and Nadja Siiri KUJANSON-LELIO's residence and home

office located at 7310 Timberneck Court in Charlotte, North Carolina.  The search warrant

application and affidavit were presented to United States Magistrate Judge David C. KEESLER.

The warrant was issued and signed by Judge KEESLER.

19.     On April 16, 2019, members of  DEA Agent BRADSHAW'S investigative team

executed the aforementioned Search and Seizure warrant located at 7310 Timberneck Court in

Charlotte, North Carolina..  The residence located at 7310 Timberneck Court was secured and

occupants were detained prior to DEA Agent BRADSHAW, Special Agent BROWN, and I, Inv.

TERRY's arrival.  Once on scene I, Inv. TERRY, presented Dr. David LELIO and Nadja

KUJANSON-LELIO with a copy of the Search Warrant. Dr. David LELIO was cooperative

with Agent BROWN and I, and advised us that what medical records he had for Joseph MILES

and Michael MILES were located upstairs in his home office.  I, Inv. TERRY, asked Dr. David

LELIO if he minded walking upstairs with Special Agent Brown and I, Inv. Terry, to provide us

with medical records pertaining to Joseph MILES and Michael MILES.  Dr. David LELIO,

located and handed me a folder with only a couple medical records for Joseph MILES and a

larger file for Michael MILES, which contained mostly prescription profiles and pharmacy

records.  I, Inv. TERRY asked Dr. Davd LELIO if this was all the Medical Records he had for

Joseph and Michael MILES. Dr. LELIO stated that was all the records that he had, and that he didn't have any Medical Records stored electronically.

20.      On April 30, 2019, Dr. Gayle SUZUKI with the Commonwealth of Virginia Department of Health and the Office of the Chief Medical Examiner completed her Report of Investigation (W-082-19) for the decedent Michael MILES. Dr. Gayle SUZUKI stated that the decedent is a 63-year old man who was found unresponsive on a couch at home. He was pronounced dead at the scene. Drug paraphernalia (syringes with liquid) were present at the scene. At autopsy, there were no injuries. Natural disease identified included severe narrowing and hardening of the blood vessels of the heart and evidence of an old heart attack, changes of the kidneys usually seen in association with high blood pressure, and a kidney stone in the right kidney. Toxicology was positive for fentanyl and heroin. Etizolam was also detected, which did not cause death. The cause of death was reported as ACUTE FENTANYL AND HEROIN INTOXICATION; Manner of death: ACCIDENT.

21.      On June 21, 2019, Joseph William MILES of 142 Ridgeland Drive Max Meadows, Virginia 24360 was interviewed at the Wythe County Sheriff's Office by Special Agent Brown with the Virginia State Police and I, Inv. Terry. Miranda Warnings were read to Joseph MILES, and he agreed to speak with Special Agent Brown and I freely and voluntarily. Joseph MILES provided the following information:

- Joseph MILES said that he met Dr. David LELIO and his wife Nadja LELIO at their house during a Halloween party in the year 2013 or 2014. Joseph MILES said that he started helping Nadja LELIO work on the hardwood floors in the house three or four days a week for approximately three weeks. Joseph MILES stated that during this time he became friends with Dr. David LELIO and his wife Nadja LELIO. Joseph MILES stated

that he worked on the floors at the LELIO'S residence from approximately 10 A.M. to 4 P.M. or 5 P.M. Joseph MILES said that Dr. David LELIO would come in and say hello. Joseph MILES said that he started getting close with Dr. David LELIO and Nadja LELIO after his mother got sick. Joseph MILES stated that Dr. David LELIO worked in the same hospital that his mother would visit.

- Joseph MILES said that he started seeing Dr. David LELIO when Dr. LELIO was working for the Carolina Health System. JOSEPH said that he started seeing Dr. David LELIO in the year 2016 or 2017 for pain he had suffered during a vehicle accident. JOSEPH said that Dr. David LELIO and his wife Nadja LELIO, approached him with an offer saying, "I will write this prescription for you but you have to give my wife this." JOSEPH stated that Dr. David LELIO told him that he would increase his dose and that he would have to give his wife Nadja LELIO half of the prescriptions. JOSEPH stated that out of the prescriptions Dr. David LELIO wrote in his name, he would give Nadja LELIO OxyCodone 10mg, after it was filled. JOSEPH stated that he was getting approximately 60 pills out of the prescription. JOSEPH stated that Nadja LELIO would get approximately half of the prescription. JOSEPH stated that he assumed Dr. David LELIO wouldn't write him any more prescriptions if he didn't share with Nadja LELIO as agreed. JOSEPH went on to say that the medication was addictive and that this was an unsaid rule. JOSEPH stated that it quickly changed to the OxyContin 20mg, and that he would still give Nadja LELIO half of the prescription per his agreement with Dr. David LELIO and Nadja LELIO.

- JOSEPH stated that he would normally just take Nadja LELIO'S part of the pills to the LELIO'S house and give them to her directly. JOSEPH stated that often times he would

just go to Dr. David LELIO'S residence and pick up his prescriptions. JOSEPH stated

that when he would go into the residence he would speak to Dr. David LELIO as a friend

and Dr. LELIO would say "your prescriptions are on the office desk." JOSEPH stated

that the difference between Dr. LELIO and another doctor was that he knew Dr. LELIO

on a personal basis and the fact that he had an agreement with Dr. LELIO and his wife

Nadja LELIO in reference to giving Nadja LELIO half of the prescriptions.

- JOSEPH stated that his father Michael MILES was also getting prescriptions from Dr. David LELIO. JOSEPH stated that Nadja LELIO got involved with those prescriptions as well. JOSEPH stated that Nadja LELIO got upset because the prescriptions Dr. David LELIO was writing for Michael MILES was split three ways between Michael MILES, Joseph MILES, and Nadja LELIO. JOSEPH stated that Nadja LELIO would get 20 pills out of a 60 pill prescription. JOSEPH stated that on approximately ten occasions, prescriptions were delivered to his Virginia residence located at 142 Ridgeland Drive Max Meadows, Virginia 24360 (Wythe County), by Dr. David LELIO and Nadja LELIO. JOSEPH stated that prescriptions filled in Mount Airy, North Carolina were the ones usually delivered by Dr. David LELIO and Nadja LELIO. JOSEPH stated that on several occasions, he met Dr. David LELIO and Nadja LELIO at the Walgreens Pharmacy in Mount Airy, North Carolina. JOSEPH stated that Nadja LELIO received half of every prescription he received for an opiate from Dr. David LELIO..

22.    On August 12, 2019, an interview with Dr. David Francis LELIO and his attorney, Daniel

Zamora, Esquire, was held at the United States Attorney's Office in Abingdon, Virginia. This

interview was requested by attorney Zamora and was scheduled for August 12, 2019. Assistant

United States Attorney (AUSA) Randy RAMSEYER advised Dr. David LELIO that this

interview was voluntary and he didn't have to make any statements. AUSA RAMSEYER also advised Dr. David LELIO that if he did decide to make any statements, they could be used against him in court. Dr. LELIO stated that he understood, and began answering questions directed to him by AUSA RAMSEYER and AUSA BUSSCHER.

23.     During the interview, Dr. LELIO stated he had only practiced medicine in Illinois and North Carolina but had recently obtained a license to practice in Florida. Dr. LELIO stated that he had worked at Atrium from 2003 to June of 2018. Dr. LELIO stated that he left Atrium because it was "too taxing". He said he had lost out on the personal aspect. Once he left Atrium in June of 2018, he was under a non-compete and couldn't practice within 15 miles of the hospital or solicit current patients of Atrium. Dr. LELIO said that his residence was within 15 miles of Atrium and that he didn't take any patients with him.

24.     Dr. LELIO said he was seeing approximately 30 patients at his residence located at 7310 Timberneck Court in Charlotte, North Carolina, for free or on a "pro bono" basis. He said that out of the 30 patients, approximately four patients were not receiving any prescriptions from him. Dr. LELIO said that none of the pills from his prescriptions were being given back to his wife or shared with his wife, Nadja LELIO. Dr. LELIO also said he has never had a conversation or an agreement of such with any of his patients prior to issuing them written prescriptions for medication.

25.     Dr. LELIO initially stated he had never met any of his patients at a pharmacy. Dr. LELIO was then asked specifically about the Walgreens Pharmacy in Mount Airy, North Carolina. Dr. LELIO stated that on one occasion he met with Joseph MILES and Michael MILES at the Walgreens Pharmacy in Mount Airy, North Carolina. He said he wrote prescriptions for medication at his residence that day without seeing Joseph MILES or Michael

MILES. Dr. LELIO stated he gave the prescriptions to Joseph MILES and Michael MILES at the Walgreens Pharmacy in Mount Airy, North Carolina, and then waited until they came out of the store. Dr. LELIO stated he and his wife Nadja LELIO then followed Joseph MILES and Michael MILES to their residence located at 142 Ridgeland Drive Max Meadows, Virginia in Wythe County. Dr. LELIO said that his written prescriptions could not be filled in Virginia. Dr. LELIO stated that neither he nor his wife Nadja LELIO had gotten any of those pills back.

26.     Dr. LELIO said that after leaving Atrium, he did not meet anyone else at any pharmacies. Dr. LELIO said he had approximately four or five patients he was seeing for pain problems. Dr. LELIO was asked about his training on pain management. Dr. LELIO said he has read several articles regarding pain management and feels comfortable with it. Dr. LELIO stated he had previously prescribed narcotic pain medications for his patients Michael MILES, Joseph MILES, Elizabeth JARO, Elizabeth HANCE, and Marjorie DIRKSHNEIDER.

27.     Dr. LELIO stated that both Joseph MILES and Michael MILES were patients of his when he was at Atrium.  He said he met Joseph MILES socially once or twice before seeing him as a patient in 2016. He stated he met Michael MILES in 2017, at Michael's wife's funeral before seeing him as a patient. Dr. LELIO stated that neither Joseph MILES nor Michael MILES were prescribed OxyContin on their first visits. He stated they just started talking to him more and more about their pain.

28.     Dr. LELIO stated that neither he nor his wife Nadja LELIO were at the MILES'S residence the day Michael MILES passed away or the week leading up to his death. Dr. LELIO stated that Joseph MILES called him the day Michael MILES passed away and he advised him to contact 9-1-1. Dr. LELIO stated that he and his wife Nadja LELIO went to the MILES'S residence that day after receiving the call to provide support for Joseph MILES.  Dr. LELIO

spoke about being held at the residence in Wythe County for several hours. Dr. LELIO then

stated he was not held and could have left but chose to stay.

29.    Dr. LELIO stated that following the death of Michael MILES, Joseph MILES did not

continue seeing him as a patient. Dr. LELIO stated that other patients continued to receive

OxyContin after Michael MILES' death. Dr. LELIO said that Elizabeth HANCE is the only

patient who should have any OxyContin left from a previous prescription. Dr. LELIO was asked

again if any of the pills he prescribed to his patients were coming back to either him or his wife

Nadja LELIO and Dr. LELIO said "no."

30.    Dr. LELIO said that his wife Nadja LELIO was friends with the MILES'S and that he

does not think she has taken them any drugs. Dr. LELIO'S attorney stated that this information

was protected by the marital privilege and his client was not going to talk about his wife Nadja

LELIO. Dr. LELIO said this was all a "learning experience" for him transitioning from big

healthcare to private practice.

31.    Dr. LELIO stated he felt like Joseph MILES and Michael MILES needed the OxyContin

and had benefited from it. He said that it had improved their level of functioning and that they

could get more done around the house. Dr. LELIO stated this information was self-reported by

Joseph MILES and Michael MILES.

32.    Dr. LELIO stated he never saw any needle or track marks on Michael MILES'S arms.

Dr. LELIO stated he never actually did a physical exam on Michael MILES to observe such

marks. Dr. LELIO said he never did a physical exam on any of his patients. Dr. LELIO said he

would just take blood pressure, pulse, height, and weight. Dr. LELIO stated he never actually

did an exam to determine why his patients were having pain. Dr. LELIO stated that

DIRKSCHNEIDER and HANCE started with Ibuprofen. Dr. LELIO could not remember if he started them on it or just continued them on it.

33.     On August 23, 2019, Special Agent BROWN with the Virginia State Police and I, Inv. TERRY spoke with Marjorie DIRKSCHNEIDER at 7303 Timberneck Court in Charlotte, North Carolina, whom is Dr. LELIO'S neighbor and patient. Marjorie DIRKSCHNEIDER agreed to speak with Special Agent BROWN and I  in reference to Dr. David LELIO and stated the following:

- Mrs. DIRKSCHNEIDER stated she was good friends with Dr. LELIO and his wife Nadja LELIO. She stated she was upset with how Dr. LELIO and his wife Nadja LELIO were treated by Agents with the Drug Enforcement Administration (DEA). Mrs. DIRKSCHNEIDER asked me if my name was Chris, and I stated "yes". Mrs. DIRKSCHNEIDER stated that the LELIO'S told them I, Inv. Terry, was the only one who treated them with respect. Mrs. DIRKSCHNEIDER stated she had seen video footage from the execution of the Search Warrant at the LELIO'S residence.

- Mrs. DIRKSCHNEIDER stated she had started seeing Dr. LELIO approximately one and a half years ago for psychiatric and pain-related issues. Mrs. DIRKSCHNEIDER stated that Dr. LELIO never conducted any physical exams on her. Mrs. DIRKSCHNEIDER stated she has had a total of approximately ten visits with Dr. LELIO. Mrs. DIRKSCHNEIDER stated she saw Dr. LELIO in his office downstairs at his residence and that sometimes Dr. LELIO would come over to her residence.

- Mrs. DIRKSCHNEIDER stated she was already receiving pain medication from her previous doctor who had retired. Mrs. DIRKSCHNEIDER stated she provided Dr. LELIO with some x-rays that were taken several years ago from an injury she had

suffered from a broken bone before seeing Dr. David LELIO. Mrs. DIRKSCHNEIDER

stated she was being prescribed the pain medication from Dr. LELIO due to this injury.

I, Inv. TERRY then served Mrs. DIRKSCHNEIDER with a Subpoena to testify before a

federal grand jury in Abingdon, Virginia in reference to the ongoing investigation

concerning Dr. LELIO and his wife Nadja LELIO.

34.     On September 10, 2019, Marjorie Lynn DIRKSCHNEIDER testified before members of

the federal grand jury in Abingdon, Virginia. Mrs. DIRKSCHNEIDER was asked questions by

Assistant U.S. Attorney Lena BUSSCHER, Assistant U.S. Attorney Randall RAMSEYER, and

members of the grand jury. Mrs. DIRKSCHNEIDER, having been duly sworn to tell the truth,

testified as follows:

- Mrs. DIRKSCHNEIDER stated she currently resides at 7303 Timberneck Court in

  Charlotte, North Carolina. Mrs. DIRKSCHNEIDER stated that she first met Dr. David

  LELIO when they moved in across the street from her on Christmas Eve approximately

  15 years ago. Mrs. DIRKSCHNEIDER stated she has known Dr. LELIO and his wife

  Nadja LELIO for a long time.

- Mrs. DIRKSCHNEIDER stated she started seeing Dr. LELIO as a formal patient more

  recently. Mrs. DIRKSCHNEIDER said she was seeing Dr. LELIO for depression. Mrs.

  DIRKSCHNEIDER stated that a typical visit with Dr. LELIO was mostly talking and

  catching up. Mrs. DIRKSCHNEIDER stated that they would talk about how her kids

  were doing and everything because they were also friends. Mrs. DIRKSCHNEIDER

  stated that Dr. LELIO never conducted any physical exams. He never took her blood

  pressure or vital signs. Mrs. DIRKSCHNEIDER stated that Dr. LELIO prescribed her

Cymbalta, Abilify, Lunesta, and Propranolol for depression, pain, sleeplessness, and the shakes.

- Mrs. DIRKSCHNEIDER was asked if Dr. LELIO ever prescribed her any opioids. Mrs. DIRKSCHNEIDER stated "that's where it got gray, so I'm gonna say no." Mrs. DIRKSCHNEIDER stated that Dr. LELIO did prescribe opioids in her name, but they were not for her. Mrs. DIRKSCHNEIDER was asked to explain to the Grand Jury what that meant. Mrs. DIRKSCHNEIDER stated that Dr. LELIO'S wife has had numerous knee surgeries and is in horrendous pain. Mrs. DIRKSCHNEIDER stated that other physicians in North Carolina would not prescribe Nadja LELIO opioid pain medications, and that Dr. LELIO and Nadja LELIO had to go to Florida to get such prescriptions. Mrs. DIRKSCHNEIDER stated that she allowed Dr. LELIO to prescribe opioids in her name to give to his wife, Nadja LELIO, and that she "just did it as a friend. I let him write the prescriptions for me as a friend for Nadja."

- Mrs. DIRKSCHNEIDER stated that Dr. LELIO wrote prescriptions for opioids in her name but the prescriptions were used by his wife Nadja LELIO. Mrs. DIRKSCHNEIDER stated that an agreement was made with either Dr. LELIO or Nadja LELIO. Mrs. DIRKSCHNEIDER stated she was approached and the conversation was "you know how much pain I'm in. Would you do me a huge favor and let Dave write you, write you the prescription for the opioids and then give 'em to me". Mrs. DIRKSCHNEIDER stated that as a friend, she did it. Mrs. DIRKSCHNEIDER stated the opioid medication Dr. LELIO prescribed in her name was OxyCodone.

- Mrs. DIRKSCHNEIDER stated these opioid prescriptions were not written during her visits with Dr. LELIO. Dr. LELIO would call her and ask "can you do this for me one

more time." Mrs. DIRKSCHNEIDER stated if the prescription records show that this

occurred four times, that it's possible, but she could only remember it happening on three

occasions.  Mrs. DIRKSCHNEIDER stated Dr. LELIO gave her the paper prescriptions.

Mrs. DIRKSCHNEIDER would then go and fill the prescriptions at either Harris Teeter,

Walgreens, or CVS Pharmacy.  Mrs. DIRKSCHNEIDER would then give the whole

bottle of pills to either Dr. LELIO or Nadja LELIO.  Mrs. DIRKSCHNEIDER stated that

Dr. LELIO would reimburse her for the cost of the pills with cash money.

35.    Based upon the facts set forth above, there is probable cause to believe that David Francis
LELIO and Nadja Siiri KUJANSON-LELIO did violate federal laws, specifically Title 21, U.S.C
§846, which states "any person who attempts or conspires to commit any offense defined in this
subchapter (i.e. Title 21, U.S.C. §841(a)(1)), shall be subject to the same penalties as those
prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

36.    Based upon the facts set forth above, there is probable cause to believe that David Francis
LELIO also violated Title 21, U.S.C. § 841(a)(1), which states that it shall be unlawful for, "any
person knowingly or intentionally, to distribute, or dispense, or possess with intent to distribute
or dispense a controlled substance " and Title 18, U.S.C. §1001(a)(2), which states that
"whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of
Government of the United States, knowingly and willfully, makes any materially false, fictitious,
or fraudulent statement or representation" shall be in violation of the statute.


I declare under the penalty of perjury that the foregoing is true and accurate to the best of

my knowledge and belief. Executed on October 28, 2019.

10/28/2019

Christopher J. Terry, Investigator, (WCSO)                Date

Subscribed and sworn to before me, this 28th day of October 2019 in Abingdon,

Virginia.

United States Magistrate Judge Pamela Meade Sargent